THE PEOPLE OF THE STATE OF NEW YORK ex rel. BENJAMIN K. PHELPS *v.* THEODORIC R. WESTBROOK.

*Indictment — finding of, while an examination of the prisoner is pending before a magistrate.*

On August 24, 1877, one Gessner having been arrested and brought before a police justice, in the city of New York, upon a charge of forgery, his examination was commenced and then adjourned to September third. On that day, the grand jury presented to the Court of General Sessions an indictment against him for the same alleged forgery, upon which a bench warrant was issued and Gessner taken into custody. The police magistrate, at Gessner's request, declared the examination adjourned, and Gessner was brought into the Court of Sessions and duly committed upon the indictment. Subsequently, upon a *habeas corpus* and *certiorari* sued out by Gessner, he was directed to be discharged from imprisonment under the commitment of the Court of General Sessions, and remanded to the custody of the magistrate, in order that the latter might continue and conclude the examination.

Upon a *certiorari* to review this decision, *held,* that there was nothing in the statutes or practice of the courts that prevented a grand jury from finding an indictment, or the Court of General Sessions from proceeding to try and determine the same, because an examination in relation to the same offense was at the time pending and undetermined before an inferior magistrate.

That even if there were any irregularity in so doing, the error was one to be considered and corrected by the court in which the indictment was pending; and that it should not be passed upon in a collateral proceeding by any other court or officer.

CERTIORARI to review the decision and order of the respondent, a justice of the Supreme Court, on *habeas corpus* and *certiorari* in the matter of Nelson A. Gessner.

*B. K. Phelps,* for the relator.

*C. B. Smith* and *John Graham,* for the respondent.

DAVIS, P. J.:

Nelson A. Gessner was arrested on the 24th of August, 1877, upon a warrant issued by a police justice on complaint by affidavit made before him on a charge of forgery, and demanded an examina-

tion. The examination before the magistrate was commenced and continued by various adjournments, until the third day of September following. On that day the grand jury of this county presented to the court of General Sessions, an indictment against the prisoner for the alleged forgery. Thereupon a bench warrant was issued out of the court of General Sessions against him, upon which he was taken into custody. The police magistrate, at the prisoner's request, declared the examination before him adjourned, and the prisoner was brought into the court of General Sessions and duly committed upon the indictment. The prisoner sued out a writ of *habeas corpus*, returnable before the respondent, Mr. Justice Westbrook, and also a writ of *certiorari* in aid of the *habeas corpus*, granted by, and returnable before, the same justice, to bring up all the proceedings that had been had before the police justice. After the hearing before him, Mr. Justice Westbrook made an order discharging the prisoner from imprisonment and restraint under the warrant of the General Sessions upon the indictment so found, and remanding him to custody under the warrant issued by the police justice, to the end that the police justice should proceed with the examination before him.

The crime of the prisoner was alleged to have been committed in the city and county of New York. There can be no doubt, therefore, that under the statute, the grand jury of the Court of General Sessions had jurisdiction and authority to inquire into his offense, and to present it by indictment for trial (2 R. S., 208, § 5; id., 209, § 7, and 3 R. S. [6th ed.], 234, § 7), and the same statute confers jurisdiction upon the Court of General Sessions to try such indictment. The crime charged was a felony and could not, under the Constitution of this State, be brought to trial in any court without a previous presentment by a grand jury. It must be presumed that the indictment was found by the grand jury upon sufficient and satisfactory evidence, tending to establish the guilt of the accused; and whether that body was or was not aware of the examination for the same offense pending before the police magistrate does not, we think, tend in any wise to impair or affect its jurisdiction.

An examination before the arresting or any other magistrate is not a necessary preliminary to an indictment, and in cases of felony, its object is solely to inquire whether there exists sufficient reasons

to justify the holding of the accused, until the charge against him shall have been presented to and passed upon by a grand jury of the county; and there seems to be no reason to doubt, that if the examining magistrate were to discharge the accused in such a case, on the ground, that in his opinion, there was not sufficient reason to believe him guilty, the jurisdiction and right of the grand jury to investigate the charge and pass upon it by finding an indictment for the alleged offense would be in no degree affected. If this be so, there seems as little reason to doubt, that upon the presentment of the indictment in this case to the court of General Sessions, that court had not only jurisdiction to try the indictment, but it became its duty through the process given it by law, to acquire jurisdiction of the person of the accused and in default of reasonable bail to commit him for trial. There is nothing, either in the statutes or in the practice of the courts, that requires a court of General Sessions under such circumstances to pause and inquire, whether some inferior magistrate has an examination pending and yet incomplete before him in relation to the same offense.

But if there be any question of irregularity, affecting the finding of the indictment under such circumstances, it is one belonging to the court in which the indictment is pending, to be brought before it for its consideration, and not one in our judgment, to be considered and passed upon in a collateral proceeding by any other court or officer. Even if it be conceded, that the court under such circumstances might or ought to quash the indictment for irregularity, because it was found while an examination was pending before the arresting magistrate, yet no other court or judge would have any power to do so while the indictment remained in and solely under the jurisdiction of the court of General Sessions. The Court of Sessions having full power and jurisdiction to issue the process in this case, upon an indictment which the grand jury had jurisdiction to find and present, no justice of the Supreme Court as such, is clothed with power to discharge the prisoner from arrest or custody on such process, either on *habeas corpus* or any other proceeding because of any supposed irregularity in the proceedings before the grand jury. The only power such justice possesses is to let to bail under the circumstances, specified by statute. (2 Revised Statutes [Edmund's ed.], 752, § 56.)

The question of the power of a grand jury to indict while an investigation of the charge is pending before the arresting magistrate, has been several times before different courts of this State. In *The People* v. *Hyler* (2 Parker, 566), which was a motion to quash an indictment on the ground that a preliminary examination had been improperly refused after an arrest upon a warrant issued by a coroner, the court said: "It was not contended on the argument, that there has been any irregularity in the finding of this indictment, for it cannot be denied that the grand jury have full power to inquire into and to present by indictment all persons charged with crime, and that, too, whether such persons are or are not under arrest and examination before any of the magistrates of the county." In *French* v. *The People* (3 Parker, 114), the indictment was for a misdemeanor in violating the excise laws. The defendants pleaded to the indictment that there had been no examination or preliminary proceedings against them before a magistrate, pursuant to the provisions of the statute. The court held the plea invalid, and that the right of the people to commence proceedings for the punishment of crime before the grand jury, cannot be taken away by implication. And in *The People* v. *Paige* (3 Parker, 600) the same point was ruled.

In *The People* v. *Horton* (4 Parker, 222) an indictment was found by the grand jury, while an investigation of the charge was pending before the magistrate. A motion was made to quash the indictment upon that ground, which was denied. The case was brought to the General Term of the Superior Court of Buffalo, by writ of error, and bill of exceptions, and the exception to the denial of the motion to quash the indictment was disposed of by the court in these words:

"The motion to quash the indictment upon the ground that the investigation of the charge was still pending before the magistrate when the indictment was found was frivolous. The grand jury has jurisdiction to inquire of and present all offenses committed within the county."

In *The People* v. *Heffernan* (5 Parker, 393) the prisoner was indicted in the New York General Sessions while an examination was pending before the arresting magistrate. A motion was made to quash the indictment upon that ground, and the learned recorder,

after citing some of the cases above referred to, said: "It is not claimed by the defendants' counsel, that the legislature has any-where expressly prohibited action by the grand jury pending an examination before the magistrate, but it is insisted, that the statutes providing for such an examination contain an implied prohibition. I am unable so to understand those statutes and do not believe that the legislature, if it had intended so materially to interfere with the well-established jurisdiction and powers of grand juries, would have failed to express such intention in unmistakable language." And again he says: "The grand jury, under the obligation of their oaths, must determine as cases are presented whether they will or will not act upon them prior to an examination before a magistrate and while such an examination is pending. If it were otherwise, it is plain to see that justice might be often delayed, if not entirely defeated." We think it may, with propriety, be said, that for many years the uniform practice of this State has been in conformity to the rules established by these several cases; and that the case relied upon by the respondents' counsel (*The Matter of Luny*, decided by Edmonds, J., in 1849, but never reported), has never been followed; and it may safely be said, not to have been known generally to the profession or to the courts.

On looking at the provisions of the Revised Statutes which regulate proceedings before magistrates upon an arrest, it is manifest that the intention of the legislature in using the imperative language contained in those provisions was carefully to prescribe the form of the proceedings in all cases where an examination is had, so that such magistrates should have a plain guide for conducting the examinations before them. But it seems equally clear that it was not the intention to require the magistrate to continue the examination on behalf of the person arrested under and in despite of all circumstances, as for instance, if he is satisfied that the evidence of the prosecutor and his witnesses fails to establish any charge; or where the prosecutor or any one on behalf of the people fails to produce any witnesses; or where the charge is properly withdrawn by any one having legal authority so to do; nor to continue the same whenever the fact of the action of the grand jury upon the same charge by finding an indictment shall be brought

to his notice, and shall render nugatory any further proceeding on his part. The intention of the legislature was, that no person should be held to trial by the arresting magistrate except upon such an examination as the statute prescribes, and from such a result the accused party is intended to be protected, in cases where the evidence shall be insufficient, by the carefully detailed provisions of the statute. But we think there was no intention to compel the magistrate to continue such an examination after its main object and purposes are rendered nugatory by the presentment of an indictment by a grand jury against the accused for the same offense, to a higher tribunal clothed with power to try the guilt or innocence of the accused, in the form prescribed by the Constitution and laws.

This case is itself, perhaps, the most forcible illustration of the fallacy of the construction claimed, for when the prisoner was remanded to the custody of the warrant issued by the examining magistrate for further examination, the refusal or mere neglect of the district attorney or prosecuting party to produce or offer any further evidence, would be a complete determination of the proceedings before the magistrate. There would be nothing left for him to do but to discharge the accused so far as the complaint before him was concerned; or if he went on and examined such witnesses as the accused should produce, that proceeding could have no possible operation upon the pending indictment. At the close of the examination the magistrate could do nothing more in the prisoner's favor than to discharge him; but all that had been done subsequent to the indictment could neither be used on its trial, nor be of any legal advantage to the prisoner; or if the magistrate should conclude to hold him for trial, and require bail, such bail could not be to answer the pending indictment upon which he could be tried notwithstanding the bail given before the magistrate for appearance at some future court. The establishment of a practice by examining magistrates and the effect of their action in accordance with the opinion given by the respondent on discharging the prisoner, would be apt to work serious delays and embarrassments, especially in the counties of the State where grand juries sit infrequently. The prolongation of an examination might easily, in such cases prevent the finding of an indictment for months by simply continuing the same for the few days in which the grand

jury is in session. The system could be used and often would operate to prevent rather than promote justice, and the action of grand juries would be thwarted oftener than aided by such preliminary examinations.

We are unable to see any substantial ground upon which the order under review can be sustained. We think the proceeding should be reversed and the custody of the prisoner restored to the warden, under the warrant issued by the Court of Sessions, to remain in custody for his trial, unless bail be given.

Daniels, J., concurred.

Brady, J. :

The statute provides for a preliminary examination, and it was begun in this matter. Several witnesses were examined, and then an indictment was found and the examination, which is in effect a hearing upon the guilt or innocence of the accused, was declared suspended or finished by operation of the indictment found.

The authority for the custody of the prisoner Gessner was changed, because he was then held under a bench warrant predicated of the indictment. If the examination had proceeded, and the magistrate had declared that the offense alleged was not established, the prisoner, with the warrant mentioned outstanding, could not have obtained his liberty upon that decision alone.

The value of the proceeding does not appear, therefore. The statute, it is true, gives the right to an examination, and when commenced it should be closed in some form doubtless other than by another proceeding in the same matter by a higher authority to consider it.

If, for example, the public prosecutor, having obtained the indictment and bench warrant, had appeared before the magistrate and declined to take any further part in the examination, and allowed it to proceed until it was terminated, and then caused the arrest of the prisoner on the bench warrant, the contemplated forms would have been accomplished, and the law administered. It may be that, considering the effect, this would be an idle performance.

There are, however, it must be said, grave objections to this course.

The examination, for example, might be continued until the grand jury in session had adjourned, and for an indefinite period beyond that occurrence, and thus prevent the administration of justice with such diligence as makes it valuable in the punishment, and, therefore, the prevention of crime.

The power existing, however, to find the indictment, I do not see how the consequences which are assailed in this case can be averted under existing laws. If the indictment was improperly obtained the remedy is not by *habeas corpus*. It is by motion to quash.

I am, therefore, led to think that the conclusions of Justice Westbrook, on principle and authority, were erroneous.

Proceedings reversed; custody of prisoner restored to the warden under the warrant issued by the Court of Sessions, to remain in custody for trial unless bail be given.